**DEALTRY v. POSSE SCHOOL, Inc.**

No. 3360.

Circuit Court of Appeals, First Circuit.

Dec. 28, 1938.

Earle S. Tyler, of Watertown, Mass., for appellant.

Paul B. Sargent, of Boston, Mass., for appellee.

Before BINGHAM and WILSON, Circuit Judges, and PETERS, District Judge.

PETERS, District Judge.

This is an appeal from an order of the district court granting an injunction in the course of a reorganization proceeding pending under former Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207.

The appeal was taken by Clarence W. Dealtry, whose subsequent death was followed by an order of this court permitting his administratrix to be substituted as party appellant; but the original party, Mr. Dealtry, is the person herein referred to as the appellant.

The appellant contends that the order granting the injunction was invalid because certain provisions of the statutes were not complied with, and that the court acted without jurisdiction, abused its discretion and violated the constitutional rights of the appellant.

There are no findings of fact in the record, but from the exhibits and admissions of counsel in their briefs the following facts appear:—

The defendant school, a corporation, filed its petition for reorganization on June 11, 1937, and, upon approval of the petition was continued in possession and authorized to continue the business.

On July 20, 1937, the debtor filed a plan of reorganization which was followed by hearings on disputed claims before a special master who filed his report in April of 1938.

At the commencement of the proceedings the appellant, Dealtry, was the clerk and attorney of the corporation and acted as such. In September, 1937, he was elected treasurer. Shortly after the filing of the master's report a dispute evidently arose between Dealtry and others interested in the corporation and an amended plan of reorganization was filed, following an order of court, on April 18, 1938, by counsel other than Dealtry.

On May 2, 1938, Dealtry received permission of the court to resign as clerk and treasurer of the corporation and to withdraw as its counsel, and did so.

On June 1, 1938, the debtor corporation filed its petition to enjoin Dealtry from interfering in the proceedings, alleging, among other things, that Dealtry, prior to his resignation, had been soliciting support for appointment as trustee by representations in part untrue; that Dealtry was interfering with the efforts of the debtor to obtain approval of its amended plan of

reorganization by making unfounded representations to creditors and other parties in interest to the effect that William F. Carlson, the president, was to be left in control by the plan; that Dealtry, although no longer treasurer or in any way authorized to act for the debtor, was continuing to solicit from its graduates donations and pledges for its benefit and payment of former pledges that had been made; that out of such funds collected he was making payments to creditors; that he had refused to turn over pledges and moneys remaining in his hands as treasurer; and that Dealtry was claiming the ownership of and the voting rights in 250 shares of stock standing in the name of its president; whereas the special master had reported to the court at the time of the hearing on confirmation of the amended plan, that, of the total outstanding stock of 308 shares, Carlson, the president, owned 125, the debtor 125, the remaining 58 being owned by other persons; that the special master had recommended that the amended plan be modified so that both the Carlson stock of 125 shares and the treasury stock of the same amount should be placed in a voting trust; that Dealtry was interfering with the proceedings by making unfounded claims as to his rights under an assignment of the stock by Carlson and threatening to bring a suit in the state courts in order to gain title to, and the right to vote, the block of 250 shares above mentioned.

It was alleged that the actions and representations of Dealtry were designed to prevent confirmation of the plan and successful culmination of the proceedings.

Dealtry's claim to the stock rests on an assignment from Carlson dated in May, 1937 (a few days before an involuntary bankruptcy petition was filed against the corporation) by which Carlson assigned all his right, title and interest in all shares of the corporation standing in his name or to which he was entitled "being not less than one-half of the authorized capital stock", subject to a previous assignment to a former president of the corporation.

This assignment to Dealtry purported to secure payment for services rendered and to be rendered by him to Carlson and to the school. It seems that, of the amount of $2,270 claimed by Dealtry to be due him, the master found $1,965 to be for services rendered the school.

Upon the filing of the application for an injunction a special appearance was entered for Dealtry objecting to the jurisdiction of the court. On the 13th of June the plan of reorganization was confirmed, and on the same day the court ordered that an injunction issue commanding that Dealtry should not:

"1. Interfere with the said Posse School, Inc.'s efforts to reorganize or communicate direction or indirectly in writing or orally with any creditor, stockholder or alumna of the said Posse School, Inc., in respect to any purported information, comment or advice with regard to the proceedings under 77B;

"2. Solicit the payment of any of the said Posse School, Inc.'s unpaid alumnæ pledges or pay further claims against the debtor, regardless of their amount;

"3. Institute any suit at law or in equity in any state court in respect to your claim of title or right to vote 250 shares of the capital stock of the said Posse School, Inc., or any part of them, now standing in the name of William F. Carlson."

The objections to the validity of the injunction are without merit.

■ Upon approval of the petition under Section 77B, the court was given exclusive jurisdiction of the debtor and its property during the pendency of the proceedings. By Section 262 of the Judicial Code, 28 U.S.C.A. § 377, the court had a general power to enjoin in aid of its jurisdiction, and by Section 2(15) of the Bankruptcy Act, 11 U.S.C.A. § 11(15), it was expressly given authority "to make such orders, issue such process and enter such judgments, in addition to those specifically provided for, as may be necessary for the enforcement of the provisions of this title." Suits to enforce a lien upon the assets of the debtor may be restrained. 77B(c) (10), 11 U.S.C.A. § 207(c) (10). Having acquired exclusive jurisdiction the court had power to issue necessary orders to protect its jurisdiction and to effect the object of the proceedings free from interference. Continental Illinois Nat. Bank & Trust Co. v. Chicago, R. I. & P. Ry. Co., 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110.

As was said in Re Schroeder Hotel Co., 7 Cir., 86 F.2d 491, 493, "Obviously, the court, in view of the purpose of the act and its express provisions, has the power

to make effective the jurisdiction granted by Congress under the constitutional power in bankruptcy and to prohibit acts of parties before it, tending to prevent the exercise of the jurisdiction and the achievement of its purposes."

That the acts of Dealtry in communicating his views, information and advice to interested parties, not his clients, was subversive of the efforts of the court to accomplish a proper reorganization, is apparent from his attitude as shown by the record, and from the fact that his letters contained misinformation and erroneous statements. Although he had ceased to have any official or professional connection with the debtor he continued to collect money and pay its debts, obviously interfering in the proceedings without right. To continue as he was doing in these respects would clearly tend to prevent the exercise of the court's jurisdiction and the achievement of its purpose, and was properly enjoined as a wrongful interference in the proceedings.

The injunction against bringing a suit in the state court in respect of the claim of title or the right to vote the block of 250 shares referred to, is objected to as beyond the power of the District Court. That court had no jurisdiction over Mr. Dealtry or Mr. Carlson, in their individual disputes, and could not in the pending proceedings enjoin a suit to settle them; nor did it attempt to. The prohibition was against litigation in respect of the block of 250 shares, one-half of which the master had reported to be held by Carlson the president, for the benefit of the debtor, making it substantially treasury stock. Dealtry's claim rested on an assignment from Carlson of his interest only, to secure payment of services to him and to the debtor. For Dealtry to bring a suit to gain title and the right to vote the 250 shares, which included the corporation stock, at that stage of the proceedings, would obviously interfere with and might seriously affect the proposed reorganization, and could be properly enjoined for that reason.

The appellant also maintains that the injunction was invalid because no bond was given as required by U.S.Code, Title 28, Sec. 382, 28 U.S.C.A. § 382, and no reasons set forth in the order as required by Section 383.

That Section 382, requiring a bond, does not apply to an injunction, such as under discussion, issued to prevent the impairment of the court's jurisdiction or the enforcement of its orders, seems well settled. Swift v. Black Panther Oil & Gas Co., 8 Cir., 244 F. 20; Guaranty Trust Co. v. Broadway, etc., R. Co., D.C., 43 F.2d 130.

Failure to set forth the reasons for the order does not invalidate it. Lawrence v. St. Louis-S. F. Ry. Co., 274 U.S. 588, 589, 47 S.Ct. 720, 71 L.Ed. 1219; Arkansas Railroad Commission v. Chicago, etc., R. Co., 274 U.S. 597, 47 S.Ct. 724, 71 L.Ed. 1224.

Moreover, the reasons for issuing the injunction in this case, while not formally expressed, were apparent from the papers on file and evidently well understood by all parties.

Appellant also suggests that under 77B(c) (10) the court was only given authority to enjoin the commencement of a judicial proceeding to enforce a lien upon the estate of the debtor until after final decree. If the section referred to should be considered applicable it cannot be said that there is a violation. The injunction does not purport to be permanent or to continue after final decree. It was issued in the course of the progress of pending proceeding and to prevent interference with its completion by a final decree.

The objection that the constitutional rights of the appellant have been violated does not appear to be well founded. The jurisdiction exercised by the District Court was within the limits of authority granted by the Bankruptcy Act, the constitutionality of which is not questioned.

The suggestion that the terms of the injunction prevent the appellant's practicing his profession of a lawyer by representing creditors of the debtor corporation is based on a too literal construction of the language. Taking the application and the order together it sufficiently appears that the continuance of his activity when an officer and attorney of the debtor, and gratuitous attempts to influence the action of persons not his clients, only were enjoined.

The right to freedom of speech is not denied the appellant. It is clear that unwarranted interference with the proceedings only was intended to be covered by the injunction.

Any doubt as to the scope of the injunction or the time covered by it may be re-

solved by an application to the district court for a clarification or modification.

No manifest abuse of discretion has been shown which requires the action of the District Court to be vacated. In re Schroeder Hotel Co., 7 Cir., 86 F.2d 491.

The decree of the District Court is affirmed with costs.