# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE, upon )
the Relation of the Secretary of the )
DEPARTMENT OF TRANSPORTATION, )
)
   Plaintiff, )
) C.A. No.: N24C-11-278 FWW
   v. )
)
J&J PROPERTIES OF LANGHORNE, )
LLC; 1.145 ACRES OF LAND, more or )
less, situate in the City of Newport, New )
Castle, Delaware, as a Permanent Easement, )
)
   Defendant. )

Submitted: March 11, 2024
Decided: May 16, 2025

*Upon Defendant's Motion to Dismiss,*
**DENIED.**

*Upon Plaintiff's Motion for an Order of Possession,*
**GRANTED.**

## MEMORANDUM OPINION

E. Chaney Hall, Esquire, Kasey H. DeSantis, Esquire, Joshua K. Tufts, Esquire, FOX ROTHSCHILD LLP, 1201 North Market Street, Suite 1200, Wilmington, DE 19801, Attorneys for Plaintiff State of Delaware, Department of Transportation.

Richard A. Forsten, Esquire, Wendie C. Stabler, Esquire, Jennifer M. Becnel-Guzzo, Esquire, SAUL EWING LLP, 1201 North Market Street, Suite 2300, Wilmington, DE 19801, Attorneys for Defendant J&J Properties Langhorne, LLC.

**WHARTON, J.**

# I.    INTRODUCTION

The State of Delaware Department of Transportation ("DelDOT") brings this condemnation action seeking to take 1.145 acres in an industrial park in Newport, Delaware. DelDOT wants to take a permanent easement in order to build an extension of Sears Boulevard so as to connect a business in the park to Route 4 and thereby reduce or eliminate truck traffic through the Pleasant Hills Estates and Silview residential neighborhoods. J&J Properties of Langhorne, LLC ("J&J") owns the land as part of a warehouse site in the park. J&J opposes the condemnation and moves to dismiss the complaint. It argues that the taking is not for a public purpose, but if it is, DelDOT should take the land in fee simple instead of a permanent easement. It also contends that alternative arrangements with Amtrak ought to be explored more thoroughly before its land is taken. After carefully considering the parties' contentions, the Court finds that the Complaint in Condemnation adequately states a claim for relief. J&J's Motion to Dismiss is **DENIED**. DelDOT's Motion for Order of Possession is **GRANTED** because J&J has failed to meet its burden to show that the taking was exercised thoughtlessly or arbitrarily by showing fraud, bad faith or gross abuse of discretion.

2

## II.   FACTS AND PROCEDURAL HISTORY

J&J is the owner of New Castle County Tax Parcel Number 07-046.40-128, State Parcel 1 ("Parcel").[1]  DelDOT seeks to acquire a permanent easement on a certain area of the Parcel that is approximately 1.145 acres ("Subject Property").[2] DelDOT has plans to complete a road project on the Subject Property that involves extending Sears Boulevard to the remaining commercial property located in the Reserved Industrial Section of Pleasant Hills, as designated and recorded with the New Castle County Office of the Recorder of Deeds in Plat Book No. 1, Page 33.[3] The road project is known as State Project No. T202209902, Sears Boulevard Extension.[4]

DelDOT states in its Complaint that the Sears Boulevard Extension will provide a link to the industrial properties located along Crowell Road.[5]  Further, the connection is necessary to address public safety concerns caused by truck traffic traveling through the Pleasant Hills Estates and Silview residential communities, and it will significantly reduce or eliminate the truck traffic by providing an alternative connection to Delaware Route 4.[6]

---

[1] Compl. ¶ 2, D.I. 1.
[2] The Subject Property is identified more specifically in DelDOT's Complaint, Exhibit A. *Id.* ¶ 3.
[3] *Id.* ¶ 7.
[4] *Id.*
[5] *Id.* ¶ 10.
[6] *Id.*

The Reserved Industrial Section was reserved as an industrial area in a 1943 plat plan, and all industrial traffic was purportedly expected to use MacArthur Drive to enter it.[7] In 1995, DelDOT constructed Sears Boulevard, which connected the Reserved Industrial Section to First State Boulevard.[8] However, Sears Boulevard did not extend to all properties in the Reserved Industrial Section.[9] Since at least 2012, DelDOT has discussed this issue with members of the community and legislators in the area.[10]

In 2019, related concerns and discussions apparently increased due to the expanded operations of the commercial business in the Reserved Industrial Section that was not connected to Sears Boulevard.[11] Local legislators, the New Castle County government, and DelDOT attempted to coordinate a cross-access agreement in 2020 and 2021 between J&J and the neighboring property owner of the parcel not connected to Sears Boulevard.[12] In the Summer of 2021, the State allocated $250,000 to New Castle County for a cross/access easement on the Subject

---

[7] *Id.* ¶ 11.
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.* ¶ 12.
[12] *Id.*

4

Property.[13] However, it became apparent by the Fall that no agreement would be reached with J&J.[14]

As part of House Bill 310 in February 2022, the $250,000 previously allocated to New Castle County was transferred to DelDOT.[15] DelDOT was authorized to use these funds to initiate a project to reduce truck traffic in the communities of Pleasant Hills Estates and Silview by building a connector driveway between parcel number 0704640129 and Sears Boulevard.[16] An additional $350,000 was allocated to this project in the Summer of 2022 via the State Bond Bill.[17]

Despite several attempts, DelDOT has been unable to reach an agreement with the owners of the Subject Property as to the purchase of the interest sought by DelDOT.[18] Negotiations with J&J began in February 2022.[19] J&J refused to grant an easement for the Sears Boulevard Extension.[20] Then, DelDOT conducted a field survey and property research, proposed a design, and held a Public Workshop Meeting on October 19, 2022.[21]

---

[13] *Id.*
[14] *Id.*
[15] *Id.* ¶ 13.
[16] *Id.*
[17] *Id.*
[18] *Id.* ¶ 16.
[19] *Id.* ¶ 17.
[20] *Id.*
[21] *Id.*

Negotiations resumed in the Spring of 2023.[22]   The parties discussed a temporary easement as DelDOT explored a compromise solution.[23]   Its solution involved pursuing an easement from the neighboring property owner to the south of the Subject Property, Amtrak.[24]   But Amtrak was only willing to consider an easement if it retained discretion to revoke the easement, which DelDOT found to be an untenable solution.[25]

DelDOT prepared an offer for the taking of the Subject Property.[26]   Its appraisal estimated just compensation at $760,000.00 and classified the interest to be taken as a permanent easement.[27]   DelDOT's offer to J&J was delivered on December 1, 2023.[28]   J&J also had an appraisal of the Subject Property conducted.[29]   Its appraisal estimated just compensation at $4,000,000.00 and classified the interest to be taken as fee simple.[30]

Throughout negotiations, J&J maintained that DelDOT has no legal right to condemn the Subject Property.[31]   Facing an impasse, DelDOT sent a letter on July

---

[22] *Id.* ¶ 18.
[23] *Id.*
[24] *Id.*
[25] *Id.*
[26] *Id.* ¶ 19.
[27] *Id.*
[28] *Id.*
[29] *Id.* ¶ 20.
[30] *Id.*
[31] *Id.* ¶ 21.

26, 2024, notifying J&J that DelDOT intended to proceed with condemnation of the Subject Property.[32]

On November 26, 2024, DelDOT filed its Complaint[33] along with its Motion for an Order of Possession.[34]  On January 24, 2025, J&J filed its Opposition to the Motion for an Order of Possession[35] along with its Motion to Dismiss.[36]  The Motion to Dismiss was followed by DelDOT's Answering Brief on February 19, 2025,[37] and J&J's Reply Brief on March 11, 2025.[38]

## III.  THE PARTIES' CONTENTIONS

DelDOT makes its claim pursuant to 10 *Del. C.* § 6105.[39]  Simultaneously, DelDOT moves for entry of an order of possession pursuant to 10 *Del. C.* § 6110.[40] Also, in compliance with Superior Court Rule of Civil Procedure 71.1, DelDOT attached an Affidavit of Necessity to its Motion.[41]  In the judgment of DelDOT's Secretary, the Subject Property is necessary for the reconstruction of a state highway.[42]

---

[32] *Id.*
[33] Compl., D.I. 1.
[34] DelDOT's Mot. for an Order of Possession, D.I. 1.
[35] J&J's Opp'n Br., D.I. 13.
[36] J&J's Mot. to Dismiss, D.I. 12.
[37] DelDOT's Answ. Br., D.I. 14.
[38] J&J's Reply Br., D.I. 18.
[39] Compl. ¶ 3, D.I. 1.
[40] DelDOT's Mot. for an Order of Possession at 1, D.I. 1.
[41] *See id.* at Ex. B.
[42] *Id.* at Ex. B, 1.

DelDOT states that the use for which the Subject Property is to be taken is consistent with 29 *Del. C.* § 9501A, and it has complied with 29 *Del. C.* § 9505(15).[43] DelDOT notified J&J that it seeks to take a permanent easement on the Subject Property pursuant to its eminent domain powers under 17 *Del. C.* §§ 132, 137, 138, and/or 175.[44]

J&J asserts that the Complaint should be dismissed without prejudice at this time, and DelDOT's Motion for an Order of Possession should be denied.[45] J&J states that it opposes DelDOT's Motion for the same reasons which support its Motion to Dismiss.[46]

First, J&J argues that DelDOT's taking is not for a public purpose, rather, it will be a private driveway for the sole benefit of a private property owner.[47] But, if the Court finds that the taking qualifies as a public purpose, DelDOT should be required to take a fee simple interest instead of a permanent easement.[48] In J&J's view, the taking is equivalent to a fee simple interest because (1) DelDOT is fencing off the area from J&J and insisting on title being free and clear of all liens and encumbrances,[49] and (2) DelDOT's current appraisal of the area as a permanent

---

[43] *Id.* ¶¶ 7-8.
[44] DelDOT's Notice of Intention to Take Possession of Property ¶ 3, D.I. 1.
[45] J&J's Opp'n Br. at 2, D.I. 13.
[46] *Id.*
[47] J&J's Mot. to Dismiss at 11, D.I. 12.
[48] *Id.* at 13.
[49] *Id.* at 14.

8

easement does not satisfy the obligations under Delaware law to compensate the owner for the fair market value of the property taken.[50]  Lastly, J&J argues that the parties should engage in further negotiations and discussions because it has learned for the first time in the Complaint that Amtrak may be willing to make land available on a temporary basis.[51]

DelDOT argues that the construction of a connector road qualifies as a public purpose.[52]  It argues that the Court should disregard J&J's unsupported factual assertions regarding any construction of gates or fencing across or along the connector road since DelDOT does not intend to construct any such fencing or gates.[53]  Next, DelDOT argues that the dispute over the type of property interest it will take does not warrant dismissal.[54]  DelDOT asserts that (1) J&J has not met its burden to overcome DelDOT's decision to take a permanent easement and not a fee simple interest,[55] (2) DelDOT has complied with the Real Property Acquisition Act ("RPAA"),[56] and (3) J&J's objection to the price paid for this taking should be addressed in the next phase of this action.[57]  Lastly, DelDOT asserts that the question

---

[50] *Id*. at 17.
[51] *Id*. at 18.
[52] DelDOT's Answ. Br. at 16, D.I. 14.
[53] *Id*. at 21-23.
[54] *Id*. at 24.
[55] *Id*.
[56] *Id*. at 27.
[57] *Id*. at 28.

of Amtrak's property does not warrant dismissal as J&J cites no authority for this proposition. [58] Further, consideration of this argument would require the consideration of matters outside of the pleadings.[59] J&J's argument that land available on a temporary basis is suitable for DelDOT's purpose in taking the land is untenable.[60]

J&J replies that DelDOT has not met its burden, and it reiterates that taking property from one business to accommodate the needs of another business is not a public purpose.[61] Next, J&J replies that DelDOT cites no cases where it has taken a permanent easement for a public road, and the taking of a permanent easement is not proper here.[62] J&J contends that (1) a permanent easement presents many hardships and problems for property owners such as J&J, and DelDOT has made no attempt to address these concerns or explain why a permanent easement is preferrable to a fee simple interest,[63] (2) DelDOT cites one case from 1913 in support of its claim that it only needs to take a permanent easement, but it does not cite any cases in modern times where it has taken a permanent easement in lieu of fee simple ownership when building a road,[64] (3) DelDOT has not cited any cases or examples where it has taken

---

[58] *Id*. at 31-33.
[59] *Id.*
[60] *Id.*
[61] J&J's Reply Br. at 10, D.I. 18.
[62] *Id*. at 13.
[63] *Id*. at 14.
[64] *Id.*

10

land for a public road by less than a fee simple interest,[65] (4) DelDOT acquired a fee simple interest from private landowners for the portions of Sears Boulevard that in constructed in the 1990s,[66] and (5) DelDOT's present actions are in violation of the Equal Protection Clause in regard to the taking made to construct Sears Boulevard in the 1990s.[67] J&J then reasserts that Amtrak is willing to make ground available.[68] Finally, J&J reiterates that this matter should be dismissed without prejudice, DelDOT should then secure an appraisal based on the taking of a fee simple interest, and, if the parties cannot agree further, then DelDOT can file a new action.[69]

## IV. STANDARD AND SCOPE OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Superior Court Rule 12(b)(6) will not be granted if the "plaintiff may recover under any reasonably conceivable set of circumstances susceptible of proof under the complaint."[70] The Court's review is limited to the well-pled allegations in the complaint.[71] In ruling on a 12(b)(6) motion, the Court "must draw all reasonable factual inferences in favor of the party opposing the motion."[72] Dismissal is warranted "only if it appears with

---

[65] *Id.* at 17.
[66] *Id.*
[67] *Id*. at 18.
[68] *Id*. at 19.
[69] *Id.* at 20.
[70] *Browne v. Robb*, 583 A.2d 949, 950 (Del. 1990).
[71] *Doe v. Cahill*, 884 A.2d 451, 458 (Del. 2005).
[72] *Id.*

11

reasonable certainty that the plaintiff could not prove any set of facts that would entitle him to relief."[73]  However, the Court will "ignore conclusory allegations that lack specific supporting factual allegations."[74]  The Court may, "despite allegations to the contrary," dismiss a complaint "where the unambiguous language of documents upon which the claims are based contradict the complaint's allegations."[75]

In condemnation proceedings on a motion for an order of possession, the burden is on the property owner to show good cause why the order should not be entered forthwith.[76]  In doing so, "the burden shall be upon the property owner to overcome the presumption of regularity and the case of *prima facie* necessity for a public use presented by the institution of such proceeding."[77]

## V.  DISCUSSION

### A.  J&J's Motion to Dismiss

#### 1.  DelDOT Has Alleged the Taking is for a Public Purpose.

Pursuant to 10 *Del. C.* § 6102: "The Superior Court shall have exclusive jurisdiction of all condemnation proceedings."  Pursuant to 10 *Del. C.* § 6103: "The

---

[73] *Id.*
[74] *Ramunno v. Cawley,* 705 A.2d 1029, 10345 (Del. 1998).
[75] *Tigani v. C.I.P. Assocs., LLC,* 2020 WL 2037241, at v*2 (Del. Apr. 27, 2020) (citing *Malpiede v. Townson*, 780 A.2d 1075, 1083 Del. 2001).
[76] Super. Ct. Civil. R. 71.1
[77] *Id.*

Rules of the Superior Court shall govern, insofar as applicable, all condemnation proceedings of real and personal property under the power of eminent domain, except as otherwise provided in [Chapter 10 of the Delaware Code]." Superior Court Rule of Civil Procedure 71.1 provides, in part:

> In a condemnation proceeding instituted by a public agency ... an order of possession of the property to be taken shall be entered forthwith, pursuant to 10 *Del.C.* § 6110(a), upon 10 days' written notice of intent to present such order, to be given to the property owner or his attorney of record, supported by an affidavit of necessity executed by the chief administrative officer of the condemning agency, unless the property owner by affidavits, depositions, and/or verified answer shall show good cause why such order of possession should not be entered forthwith. Any hearing on the issue of good cause shall be held without delay and on such affidavits, depositions, and/or verified answer. Disposition of the issue of good cause shall be made by the Court without delay.
> …
> In all such condemnation proceedings the burden shall be upon the property owner to overcome the presumption of regularity and the prima facie case of necessity for a public use presented by the institution of such proceeding.

Our Supreme Court has ruled that "[w]hen the General Assembly delegates the right of eminent domain to a governmental agency for a public purpose, as it has to DelDOT, it may also delegate to such agency the power of determining what property and how much property is necessary for the purpose. The only limit to that

13

power is that it may not be exercised thoughtlessly or arbitrarily."[78]  In order to accord proper deference to DelDOT, we must review DelDOT's "necessity determination for fraud, bad faith, or gross abuse of discretion."[79]

Article I, Section 8 of the Delaware Constitution of 1897 states that no person's "property [shall] be taken or applied to public use without the consent of his representatives, and without compensation being made."[80]  This State constitutional provision mirrors its Federal counterpart, the Fifth Amendment of the United States Constitution, which provides "... nor shall private property be taken for public use, without just compensation."[81]  Implicit in this language are two underlying assumptions: (1) that the government has the power to take private property, and (2) that it may be so taken only for a public purpose.[82]

As previously stated, DelDOT seeks to take a permanent easement pursuant to its powers of eminent domain under 17 *Del. C.* §§ 132, 137, 138, and/or 175.[83] "Public use" in the context of the State's acquisition of real property by eminent

---

[78] *State v. Hess Retail Stores, LLC*, 2015 WL 5120972, at *2 (Del. Super. Ct. Aug. 21, 2015) (quoting *Cannon v. State*, 807 A.2d 556, 560 (Del. 2002)).
[79] *Id.*
[80] *Wilmington Parking Auth. v. Land With Improvements, Situate In City of Wilmington, New Castle Cnty.*, 521 A.2d 227, 231 (Del. 1986).
[81] *Id.*
[82] *Id.* (citing *Thomison v. Hillcrest Athletic Ass'n*, 5 A.2d 236 (Del. Super. Ct. 1939)).
[83] DelDOT's Notice of Intention to Take Possession of Property ¶ 3, D.I. 1.

domain is limited by 29 *Del. C.* § 9501A. But, 29 *Del. C.* § 9501B exempts DelDOT from this limitation in the present situation.[84] That section states:

> The provisions of § 9501A of this title shall not apply to the acquisition of property or property rights by the Department of Transportation for any transportation facility, project, or program as defined in Titles 2, 9, 14, 17, and this title, if the primary purpose of each parcel being required is to maintain or improve the State's transportation network, as sworn to by the Secretary of the Department or the Secretary's authorized designee."[85]

Furthermore, the "alleviation of intolerable local traffic conditions" is a proper public purpose for a taking by the government.[86]

In *Woodwerx, Inc. v. Delaware Dept. of Transp.,* the Delaware Supreme Court affirmed a decision by the Court of Chancery where a plaintiff sought to enjoin DelDOT from spending public funds for the construction and improvement of a service road.[87] The plaintiff was a residential home-building business.[88] It's offices were located on the opposite side of the road from a major commercial development that was under construction and would include two shopping centers when

---

[84]

[85] 29 *Del. C.* § 9501B

[86] *Woodwerx, Inc. v. Delaware Dept. of Transp.*, 2007 WL 927943, at *2 (Del. Supr.) (quoting *State v. George F. Lang Co.*, 191 A.2d 322, 326 (Del. 1963)); *Golf Course Assoc, LLC v. New Castle Cnty.*, 2016 WL 1425367, at n.52 (Del. Super. Ct. Mar. 28, 2016), *aff'd*, 152 A.3d 581 (Del. 2016).

[87] *Woodwerx, Inc.*, 2007 WL 927943, at *1.

[88] *Id.*

completed.[89] DelDOT decided that the increased traffic generated by the shopping centers necessitated the service road.[90] The improvements would result in adversely affecting access to the plaintiff's property.[91]     The improvement at issue was a service road that would connect the road shared with the plaintiff to the two shopping centers.[92] When fully operational, the service road would run through a 204–home and 38–townhouse residential subdivision.[93] The property on which the service road was located had been dedicated to the public.[94]

The Court of Chancery found that because the service road was open to the public, it was a public road and that *ipso facto*, its construction served a valid public purpose.[95] Finding the caselaw of other jurisdictions in accord, the Delaware Supreme Court affirmed the decision.[96] In affirming, it quoted the Supreme Court of Virginia which had previously considered whether a service road along a limited access highway benefiting a single property owner constituted a valid public purpose:

> Whether a road sought to be constructed is a public road or one merely for the benefit of a private individual is not tested by the fact that such an individual will receive a

---

[89] *Id.*
[90] *Id.*
[91] *Id.*
[92] *Id.*
[93] *Id.*
[94] *Id.*
[95] *Id.* at *2.
[96] *Id.*

16

greater benefit than the public generally. The test is not the length of the road, or how many actually use it, but how many have the free and unrestricted right in common to use it. It is a public road if it is free in common to all citizens.[97]

The Delaware Supreme Court found that the record in *Woodwerx, Inc.* contained sufficient evidence to conclude that the connector road was being used as an alternative road and, thus, alleviated traffic congestion.[98] And, it restated that the "alleviation of intolerable local traffic conditions" is a proper public purpose.[99]

The holding in *Woodwerx, Inc.* applies to this case. DelDOT alleges the taking of the Subject Property to create the Sears Boulevard Extension is necessary to alleviate intolerable traffic conditions in the Pleasant Hills Estates and Silview residential communities. The Sears Boulevard Extension will serve as an alternate road to MacArthur Drive, thus alleviating intolerable traffic conditions in the area. This rationale is sufficient to constitute a public purpose so long as DelDOT does not permit the restriction of the public's access to the Sears Boulevard Extension with the construction of fences or gates.[100] Nothing in the Complaint infers that DelDOT will restrict the public's access to the proposed taking. To the extent the

---

[97] *Id*. (quoting *Stewart v. Fugate*, 187 S.E.2d 156, 159 (Va. 1972)).
[98] *Id*. at *2.
[99] *Id*. (quoting *George F. Lang Co*., 191 A.2d at 326).
[100] *See* ¶ 25, *supra*.

17

Court considers J&J assertions regarding any construction of gates or fencing across or along the connector road, it also considers DelDOT's response:

> The only possible gates and fences are those that ***Defendant specifically requested***. Defendant expressed security concerns regarding the road, and so DelDOT tentatively agreed that Defendant could construct gates and fences as listed in the construction plans if Defendant wished to do so. The proposed fences would not eliminate Defendant's access to the road, as Defendant incorrectly asserts. DelDOT agreed the Defendant could construct a gate in the fence so that Defendant could access the connector road. Again, all fences and gates were to be constructed by Defendant, not by DelDOT.
>
> Defendant should not be heard to complain that DelDOT's taking is wrongful because of Defendant's own request that it be allowed to limit access to the connector road. DelDOT does not plan to limit public access to the road. If access to the road is a point of contention then DelDOT still can revoke permission to Defendant to construct gates and fences.[101]

Thus, DelDOT's plan for Sears Boulevard Extension is that it will be open to the public. As long as DelDOT adheres to that plan, the purpose for which DelDOT alleges it is taking the Subject Property is a public purpose.

### 2. DelDOT Has Alleged a Permissible Quantum of Taking

Although the Court finds DelDOT has alleged the taking of the Subject Property serves a public purpose, it must still address whether DelDOT is required to take a fee simple interest rather than a permanent easement in order to state a

---

[101] DelDOT's Answ. Br. at 23 (citations omitted), D.I. 14.

claim.  DelDOT cites 17 *Del. C.* § 137 as a statute granting it eminent domain authority.  Notably, that statute reads in part: "Property rights so acquired must be in fee simple absolute or such lesser interest as the Department may deem appropriate."[102]  This statute is in accord with caselaw which implies that DelDOT may take the Subject Property as a permanent easement under its express statutory authority.[103]  The Court finds that DelDOT's Complaint  alleged a proposed taking in a quantum of estate permissible under Delaware law.

---

[102] 17 *Del. C.* § 137(a)(1).

[103] *See Thomison*, 5 A.2d at 238 ("The strict construction of Eminent Domain statutes applies both to the amount of property to be taken and to the quantum of the estate or interest, and it is generally held that unless the Statute provides that a fee simple title shall be acquired, or a fee is necessary for the purposes for which the land is taken, that only an easement or qualified fee is taken by the Eminent Domain proceedings. This does not mean that the Legislature may not authorize the condemnation and transfer of the full fee simple title but does mean that, in the absence of such express provision, only that title or only that property is taken which is necessary to be taken for the purposes of the public use or which by plain inference could be construed to have been intended to be taken."); *see also Cowgill v. Hurley*, 86 A. 731, 732 (Del. Super. Ct. 1913) (2 Elliott, *Roads and Streets*, § 879) ("Whenever a public road is laid out under an order of court, the public acquires in the highway only such rights as the public easement therein requires.  The owner of the fee is not divested of his title, and he does not part with the incidents of the soil not needed for the improvement or repair of the road, or of the system of which it forms a part."); *accord Deakyne v. Commissioners of Lewes*, 329 F. Supp. 1133, 1141 (D. Del. 1971) (citations omitted) ("It appears clear that when a public road is dedicated as such or laid out by public authority, … the fee simple owner of the land, where the road is located, is not divested of his fee title.").

### 3. Amtrak's Offer is Untenable.

J&J argues for dismissal because it learned for the first time in the Complaint that Amtrak was willing to offer land for an alternative easement nearby the Subject Property.[104] This point is without merit. The Complaint also stated that this potential option was untenable as Amtrak was only willing to grant an easement on an indefinite basis.[105]

### B. DelDOT's Motion for an Order of Possession.

Together, Rule 71.1 and 10 *Del. C.* § 6110(a) prescribe that upon 10 days' written notice of an intent to present an order of possession, presented to the property owner or its attorney of record, an order of possession shall be issued forthwith, "unless the property owner by affidavits, depositions, and/or verified answer shall show good cause why such order of possession should not be entered forthwith. Any hearing on the issue of good cause shall be held without delay."[106] In lieu of that procedure, the parties stipulated to a brief schedule for resolution of J&J's Motion to Dismiss and DelDOT's Motion for Order of Possession.[107]

Based on the record before it, the Court finds that DelDOT has complied with the requirements of Rule 71.1 and 10 *Del. C.* § 6110, and has set forth a *prima facie*

---

[104] J&J's Mot. to Dismiss at 18, D.I. 12.
[105] Compl. at 18, D.I. 1.
[106] Super. Ct. Civ. R. 71.1
[107] D.I. 11.

case of necessity for a public use. Therefore, the only issue before the Court is whether J&J has shown good cause why the order of possession should not be entered. J&J's arguments opposing an order of possession mirror its arguments in favor of dismissal.[108]

The Delaware Supreme Court has ruled that "[w]hen the General Assembly delegates the right of eminent domain to a governmental agency for a public purpose, as it has to DelDOT, it may also delegate to such agency the power of determining what property and how much property is necessary for the purpose. The only limit to that power is that it may not be exercised thoughtlessly or arbitrarily."[109] In order to accord proper deference to DelDOT, the Court reviews DelDOT's "necessity determination for fraud, bad faith, or gross abuse of discretion."[110] While J&J vigorously disagrees with DelDOT's decision condemn the Subject Property, it does not allege fraud, bad faith, or gross abuse of discretion on the part of DelDOT. The condemnation statutes make it clear that DelDOT may exercise the State's powers without delay unless there is some clear showing of irregularity sufficient to overcome the strong presumption that there was none. J&J has not met that burden.

---

[108] D.I. 13.
[109] *Hess Retail Stores, LLC*, 2015 WL 5120972, at *2 (quoting *Cannon v. State*, 807 A.2d 556, 560).
[110] *Id.*

## VI. CONCLUSION

In resolving J&J's Motion to Dismiss pursuant to Rule 12(b)(6), the Court has applied the standard of review applicable to such motions, finding it reasonably conceivable DelDOT may prevail under the circumstances susceptible to proof under the Complaint, drawing all reasonable inferences in favor of DelDOT.

J&J has not overcome the presumption of regularity and the *prima facie* case of necessity for the public use presented by DelDOT in order to warrant denial of DelDOT's Motion for Order of Possession. There is no suggestion that DelDOT exercised its eminent domain power "thoughtlessly or arbitrarily."[111] Nor, is there any suggestion that DelDOT's necessity determination constituted fraud, bad faith, or gross abuse of discretion."[112]

There are two issues in condemnation proceedings: (1) whether the taking is permissible, and (2) whether the taking is being justly compensated.[1] Although the Court holds the taking is permissible by denying J&J's Motion to Dismiss and granting DelDOT's Motion for an Order of Possession, it cannot determine just compensation on this record. That issue is left for another day.

---

[111] *Id.*

[112] *See id.*

22

**THEREFORE**, J&J's Motion to Dismiss is **DENIED**.  DelDOT's Motion for an Order of Possession is **GRANTED**.

**IT IS SO ORDERED.**

/s/ *Ferris W. Wharton*
Ferris W. Wharton, J.